AO 106 (Rev. 04/10) Application for a Search Warrant

AUTHORIZED AND APPROVED/DATE: s/ David R. Nichols, Jr. 08/18/2022

# UNITED STATES DISTRICT COURT

for the

Western District of Oklahoma

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) |
| Premises known as 2210 N. Independence Avenue, Enid, Oklahoma 73701 | ) ) ) |

Case No.  MJ-22-605-STE

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

located in the ____Western____ District of ____Oklahoma____, there is now concealed *(identify the person or describe the property to be seized):*

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☑ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 875(c) | Interstate Communications with a Threat to Kidnap or Injure |

The application is based on these facts:

☑ Continued on the attached sheet.

☐ Delayed notice of ____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

D. Hunter Marsh, Special Agent, FBI
*Printed name and title*

Sworn to before me and signed in my presence.

Date:  **Aug 18, 2022**

_____
*Judge's signature*

City and state:  Oklahoma City, Oklahoma

SHON T. ERWIN, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A SEARCH WARRANT

I, Daniel Hunter Marsh, being first duly sworn, hereby depose and state as follows:

1.      I am a Special Agent (SA) with the Federal Bureau of Investigation (FBI). As a SA, I am an investigative or law enforcement officer of the United States within the meaning of 18 U.S.C. § 2510(7), and empowered by law to conduct investigations of, and to make arrests for offenses as set forth in 18 U.S.C. § 2261A, 18 U.S.C. §875c, and 47 U.S.C. §223.

2.      I have been employed as a Special Agent with the FBI since February 2009. I am currently assigned to the Oklahoma City Division, Stillwater Resident Agency and I have been involved in a wide variety of investigative matters, including investigations targeting violent individuals, many of which involved the threats and acts of violence towards groups of persons or individuals.  During these investigations, I have participated in hundreds of interviews and reviewed communications where people are threatened or intimidated.  Often the violent individuals communicating the threats intend on inflicting emotional and or physical harm upon their victims.

3.      The information contained in this affidavit is based upon my personal knowledge and observation, my training and experience, conversations with other law enforcement officers and witnesses, and review of documents and records. This affidavit is made in support of an application for a warrant to search the entire premises located at 2210 N. Independence Avenue Enid, OK 73701 (hereinafter referred to as "the SUBJECT PREMISES"), which is described in detail in Attachment A to this affidavit, including the

1

residential dwelling, vehicles, outbuildings, the person of Randall Jack West Jr., and any computer, cellular device (as broadly defined in 18 U.S.C. § 1030(e)(1)) or other digital file storage device located there to which WEST has access or over which he has control, for the items specified in Attachment B hereto, which constitute instrumentalities, fruits, and evidence of violations of 18 U.S.C. § 2252A(a)(5)(B).

4.      This investigation, described more fully below, has revealed that an individual, believed to be Randall Jack West Jr aka Randy West aka Jack West (herein referred to as "WEST") knowingly utilized communication devices including cellular or computer devices in order to direct threatening messages in furtherance of the crime of Interstate Communications with a Threat to Kidnap or Injure, in violation of Title 18, United States Code, Section 875(c), and that there is probable cause to believe that evidence, fruits, and instrumentalities of such violations are located at the SUBJECT PREMISES.

5.      Because this Affidavit is being submitted for the limited purpose of securing a search warrant, I have not included every detail of the investigation. Instead, I have listed those facts I believe necessary to establish probable cause to believe that the defendant committed the above identified crimes and did so utilizing items that are likely to be found at the residence described in Attachment A. The following is true to the best of my knowledge and belief.

## TERMS AND DEFINITIONS

The following terms and definitions apply to this Affidavit and its Attachments:

6.      The term "computer," as defined in 18 U.S.C. §1030(e)(1), means an

2

electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical, arithmetic, or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device.

7.    The terms "records," "documents," and "materials," as used herein, include all information recorded in any form, visual or aural, and by any means, whether in handmade form (including, but not limited to, writings, drawings, painting), photographic form (including, but not limited to, microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, photocopies), mechanical form (including, but not limited to, phonograph records, printing, typing) or electrical, electronic or magnetic form (including, but not limited to, tape recordings, cassettes, as well as digital data files and printouts or readouts from any magnetic, electrical or electronic storage device).

8.    An Internet Protocol (IP) address is a unique numeric address used by computers on the Internet. An IP address looks like a series of four numbers, each in the range of 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static, or long-term, IP addresses. Other computers have dynamic, or frequently changing, IP addresses.

9.    This affidavit supports an application for a search warrant for the following premises within the Western District of Oklahoma: 2210 Independence Avenue, Enid,

3

Oklahoma, 73701.

10.     Based upon the information contained in this affidavit, I submit that probable cause exists to believe that:

> a.  One or more persons have willfully transmitted in interstate or foreign commerce communications containing threats to injure the person of another, in violation of Title 18, United States Code, Section 875(c); and

> b.  Evidence, fruits, and instrumentalities (further described in Attachment B) of these offenses will be found at the premises identified in paragraph 3 above (as further described in Attachment A).

## PROBABLE CAUSE

11.     On the morning of August 15, 2022, L.V., an employee of the Veteran Affair's Office (VA) advised the FBI Oklahoma City Division that a patient of the VA, identified as Randall Jack West (WEST), DOB: (XX/XX/1983), had become increasingly agitated with his providers and was making communications that were threatening in nature.  L.V. was aware that WEST had made previous statements to his provider or care manager about loading a bag with guns and going to Texas to kill people.

12.     Earlier, on July 18, 2022, Enid Police Department (EPD) was dispatched to 2210 N. Independence, Enid, Oklahoma based on reporting from the VA office that WEST made comments to a VA employee identified as N.C. about being suicidal, possessing guns, and packing his car with guns and going to Texas to hurt people.  EPD officers interviewed VA personnel and listened to a recording wherein WEST made statements to the effect of:

4

". . . you tell D.M. that I'm fucking coming for his ass. I'm gonna get his fucking job. I'm gonna ruin his fucking life like he's done mine the past month."

13. When EPD officers arrived at WEST's listed address of 2210 N. Independence, they conducted an interview of a person there identified as M.M. At that time, M.M. stated that WEST was not going to do anything, and he only had thoughts about going to Texas and hurting people. M.M. stated that she was a caregiver and that WEST had recently changed medications. M.M. also stated that that she was a convicted felon and could not be near firearms. EPD officers noted in their report that she made contradictory statements about living at WEST'S residence and being in a relationship with him. Police officers were then notified that WEST's stepmother, Shelley West (S.WEST), was making a scene at the local VA office and possibly involved in criminal trespass related to the care of WEST. EPD officers made contact with WEST'S father, Randall West (R. WEST) who informed them about the concerns over his son based on information provided by the VA office. R. WEST made arrangements to meet his son out in Garfield County where he was able to take possession of a firearm from WEST prior to getting into a verbal dispute and WEST driving off.

14. On August 5, 2022, EPD was contacted by M.M. in reference to WEST stating he was going to kill several people including a VA doctor, M.M, and M.M.'s son. M.M. relayed to EPD officers that WEST had an "AK" style gun and collection of other guns. M.M. told EPD officers that WEST really started to lose it back around the 4th of July when he was walking around the local festival with a gun following another man and threatening

5

him. M.M. stated this incident was investigated by EPD officers near Meadow Lake Park, but they were unable to locate WEST and he was never arrested for it. Later around this same time, WEST threatened to kill M.M.'s children if she told police about him. WEST also told M.M. about a hit list that he planned to carry out before killing himself. WEST stated that he had a FedEx hat and various disguises and was going to go after his ex-spouse J.G. as well as a marine friend named "Berg" and an unnamed VA doctor. EPD officers asked M.M. if these threats were verbal or through text and she stated that they were both. EPD officers reviewed her phone and asked M.M. to show them where threats were made to her phone. M.M. provided officers a text wherein WEST stated the following:

- "But there are some moves that need to be made do this doesn't happen to any other veterans no one is listening to my screen so maybe they're going to listen to my fucking gunfire"; and

"I'm being angry I'm done being sad I'm going to start doing what I need to do so people start listening to me and the only thing I know how to do is be a marine so good fucking luck to everyone."

15.     Upon completion of the interview, officers escorted M.M. to the court to file petition for a protective order.

16.     A review of open court records and public search records revealed multiple other protective orders or complaints that had been filed or petitioned against WEST. In 2019, J.G. filed a protective order against WEST in Texas based on verbal threats and communications which he shared in a group text message that was provided to her. The

6

group text discussed WEST's desire to torture and kill J.G. in graphic detail.  Additionally, WEST was served a protective order by Canadian County Sheriff's Office in August 2021 by his mother Marla West (M. WEST).  The order was dismissed in January 2022 after death records showed that M. WEST had died on November 11, 2021, at Integris Hospice Care.

17.     Contact was made with the Addison Police Department (APD) on August 16, 2022, to determine the status of the report filed in September 2019.  The APD officer stated the protective order was filed as a result of these threats but was listed as on a docket for review on charges and execution of the order by the Tarrant County District Attorney's Office.  An interview of J.G. was conducted on August 16, 2022, in which J.G. stated that the DA's office failed to find WEST and was therefore unable serve the order on him.  J.G. has not had any contact with WEST since he was physically removed from their residence by his mother M. WEST who had agreed to get him into treatment but then later recanted and moved WEST to live in Oklahoma with her.  WEST has tried to contact J.G. repeatedly on Facebook, but J.G. has gone to great lengths to disguise her identity, phone number, social media, and place of employment for fear of WEST coming after her.  J.G. is aware of a person named "Bird," who was previously in the Marine Corps with WEST.  J.G. believes that the two are friends.  J.G. then referred agents to contact family members who have received audio recordings from WEST from December 2021 until as recent as July 2022 which were described as threatening rants wherein WEST threatens to show up at their doorstep.

7

18.     According to Oklahoma Court records, WEST was the subject of a criminal misdemeanor complaint out of Woodward in December 2021 for allegedly harassing J.C. through the course of 27 text messages and three voicemails which he used to threaten and intimidate J.C.

19.     Additionally, on August 7, 2022, EPD received a complaint from M.M., T.S., and M.P. in reference to threatening communications from WEST. The report stated all three witnesses identified WEST as the person in the July 4th incident where he pursued a man with his firearm. Since that time, WEST has made multiple threats, including threats towards T.S.'s spouse, and threatened in text communication to kill the children of M.M. and M.P. All three witnesses said that WEST is always armed with his gun which he refers to as "karma" and keeps in his waistband.

20.     On August 16, 2022, M.M. and T.S. were telephonically interviewed. M.M. stated that WEST physically assaulted her following her July interview with EPD officers which is why she decided to file a protective order. WEST has historically been violent and uses knives to stab holes in walls and furniture in his house. At one point he discussed dressing up as a FedEx employee and driving down to Texas to find his ex-wife and gut her on her front step with one of his favorite knives. WEST has also shown M.M. various videos on a secondary phone that he has in his bedroom. In the videos, which M.M. does not know if he has posted, WEST talks about going to kill people and then killing the cops. He claims to have 39 rounds of ammunition in extended clips with silver bullets he refers to as cop killers. M.M. has personally seen the FedEx hat, secondary cell phone, and six

8

different guns in the residence and was able to describe where they could be found. M.M. has since been in hiding because WEST threatened repeatedly that he would kill her child in front of her before killing her. T.S. was also telephonically interviewed on August 16, 2022, and made similar statements that WEST verbally told her he would torture her children and make her watch before killing her and her husband.

21.     After reviewing police reports, call logs, and screenshots of communications sent to various victims and listening to voicemails and messages as well as a review of police officer body recorders, a common phone number appeared to be attributed to devices utilized by WEST. This phone number (580) 484-1942 was directly attributed to him in several communications including call logs, police reports, voice recordings and text messages and physically attributed to the SUBJECT PREMISES through an emergency ping order previously utilized by EPD to locate WEST on July 18th, 2022. The SUBJECT PREMISES (further described in Attachment A) is likely to be a location where the device is located if it is not in the possession of WEST or others, he has temporarily permitted to possess it. Multiple witnesses interviewed by police and agents describe the SUBJECT PREMISES as the known residence of WEST and have observed him or his vehicle, a 2011 Nissan Altima with Oklahoma license plate JTD-722 at this location over the last several months. Since that time and as recent as August 16th, 2022, this vehicle was observed present at the SUBJECT PREMISES. Three of these same witnesses have acknowledged in police reports that WEST was recently in possession of a firearm while at the SUBJECT PREMISES and is known to have multiple firearms and weapons including knives at the

9

SUBJECT PREMISES.  WEST has also made threats regarding the use of weapons including guns and knives to multiple people over the last year both verbally and through the use of a cellular communication device.  As of August 17th, 2022, WEST was remanded into custody at the Garfield County Jail it is unknown if any occupants not yet identified are residing at the SUBJECT PREMISES.

22.     Additional interviews of witnesses conducted on August 17th, 2022, confirmed that WEST has had a history of substance abuse including alcohol and drug usage.  WEST has taken these substances while being receiving various prescriptions for a mental health disorder.

## **PREMISES AND ELECTRONIC DEVICES TO BE SEARCHED**

23.     I have experience investigating various criminal offenses, which make use of computers and the Internet, telephones, smartphones, and various handheld electronic devices.   Based upon my training and experience, I know that such devices and instrumentalities are used, among other ways, to process and store records relating to criminal activity, including making online threats.  Individuals engaged in such crimes also commonly use various communication instrumentalities and networks, including the Internet, computers, and cellular telephone networks, to communicate their threats and discuss them with others.

24.     From my training and experience and from my discussions with forensic examiners and other investigators, I know that electronic records and information may remain upon computers, cellular or wireless telephones, and associated hard drives,

10

memory, and electronic storage media for an indefinite period. For example, cellular telephones usually contain a "call log," which records the telephone number, date, and time of calls made to and from the phone. Additionally, based on my training and experience, I know that cellular telephones, such as iPhones and Android smartphones, now offer a broad range of capabilities. These capabilities include but are not limited to: storing names and numbers in electronic address books; sending, receiving, and storing text and other messages and email; taking, sending, receiving, and storing still photographs and videos; storing and playing back audio files and voicemail messages; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Some cellular telephones also include global positioning system (GPS) technology and data for determining the location of the device at past dates/times. Many cellular telephones now may also be "synced" to a personal or laptop computer, allowing the user to back up the data stored on the phone to a user's computer.

25. From my training and experience and from my discussions with forensic examiners and other investigators, I also know that computers and cellular telephones, such as iPhones and Android smartphones, store data, both on removable media (for example, CDs, DVDs, thumb drives, memory cards, SIM (subscriber identity module) cards, etc.) and internal media and memory, in ways that are not completely known or controlled by most users. In other instances, users themselves backup data stored on computers, cellular telephones, and other media to protect against its loss, in the event of a malfunction or other event. Once stored, data is usually not destroyed until it is overwritten. For example, data

11

that is "deleted" by a user is usually not actually deleted until it is overwritten by machine processes (rather than user decision) that decide where to store data and when overwriting will occur. Therefore, files and fragments of files and other data may easily last months, if not years, if the storage media is retained. Wholly apart from user-generated files, computer and electronic storage media—in particular, internal hard drives—contain electronic evidence of how a device has been used, what it has been used for, and who has used it. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. Because this information often may be used to establish how computers and other electronic devices were used, the purpose of their use, and when they were used and by whom, I seek permission to search for and seize such evidence, as well as other, more direct evidence of the crimes noted in this warrant. Through the use of proper forensic techniques such data and evidence of criminal offenses may be recovered, notwithstanding the passage of time since a crime occurred.

26.     I also know and have been advised by forensic examiners and other investigators that searching and seizing information from computers and electronic devices often requires agents to seize most or all computers and electronic storage devices (along with related peripherals and input/output devices, software, software documentation, and data security devices and passwords), to be searched later by a qualified examiner in a controlled setting. This is true because of: (1) the volume of data contained in computers and various electronic communication and storage devices (like hard disks, diskettes, compact disks, memory chips, and other drives that may be connected to a computer); and

(2) the technical processes involved in analyzing computer and other communication systems and devices, storage devices, and their data. Computer storage devices and other media can easily store the equivalent of hundreds of thousands of pages of information (for example, a single gigabyte of storage space is approximately equal to hundreds of thousands of pages of text). To document and to authenticate such data, and to prevent its loss either from accidental or deliberate destruction requires analysis by a qualified examiner in a controlled environment. Such analysis often requires the seizure, for example, of all of a computer system's hardware and software, peripheral input/output devices, software documentation, and data security devices (including passwords) so that the system or device in question may be properly re-configured and the data contained therein may be accurately retrieved.

27.    In addition to the reasons noted above, because computer storage devices, electronic devices, and storage media are instrumentalities used to commit the crimes described in this affidavit, I seek to seize and to conduct an off-site search of same for evidence of the crimes under investigation. Such action will diminish the intrusion of law enforcement into the premises to be searched and will ensure that evidence can be searched for without the risk of losing, destroying, or missing the information/data sought to be seized pursuant to any warrant. Seizure will also preserve such items for later possible later forfeiture, provided they contain contraband or were used as instrumentalities of the crimes under investigation.

13

## CONCLUSION

I submit that the information contained in this affidavit establishes probable cause to believe that:

      a. One or more persons have willfully transmitted in interstate or foreign commerce communications containing threats to injure the person of another, in violation of Title 18, United States Code, Section 875(c); and

      b. Evidence, fruits, and instrumentalities (further described in Attachment B) of these offenses will be found at the premises identified and described in Attachment A.

29.    Accordingly, I request the issuance of a warrant authorizing FBI agents, with the assistance of other law enforcement agencies, to search 2210 N. Independence Avenue, Enid, Oklahoma 73701.

30.    I, and/or any other duly authorized federal agent or forensic examiner, will execute the warrant requested above. Execution will include powering-up and turning-on devices, and may require authorities to employ techniques, including but not limited to, computer assisted scans of the entire medium, that might expose many parts of the device to human inspection to determine whether it is evidence described by the warrant.

31.    I swear the forgoing is true and correct to the best of my knowledge and belief.

D. HUNTER MARSH
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me this 18th day of August 2022, in Oklahoma City, Oklahoma.

SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE

15

**ATTACHMENT A**

**DESCRIPTION OF LOCATIONS TO BE SEARCHED**

The entire property located at 2210 N. Independence Street, Enid, Oklahoma 73701 (SUBJECT PREMISES) including the residential building, any outbuildings, and any appurtenances thereto; any computers and storage media found within the SUBJECT PREMISES; any resident located at the SUBJECT PREMISES.

SUBJECT PREMISES is a single-family dwelling, further described as sitting on the west side of Independence Street with a front door facing to the east. SUBJECT PREMISES is constructed with tan and white siding and has a single car attached garage, with white garage door, also facing the east.





## ATTACHMENT B

## LIST OF ITEMS TO BE SEIZED AND SEARCHED

1.      All materials relating to violations of Title 18, United States Code, Section 875(c), transmitting a communication containing any threat to injure the person of another, including but not limited to any and all notes, documents, records, and correspondence, in any format and medium, including envelopes, letters, forms, papers, e-mail messages, and handwritten notes pertaining to the referenced threats.

2.      Weapons and accessories to weapons to include firearms such as rifles, shotguns, pistols, exotic knives and other otherwise legal or illegal weapons which could be used in an effort to further intimidate, coerce, harm or kill an intended victim. Accessories to weapons will include ammunition, body armor, tasers, and scopes.

3.      Any and all electronic devices including but not limited to computers, routers, modems, tablets, Cellular/mobile telephones, storage media, storage devices, computer peripherals, computer hardware, computer software, computer documentation.  A search of these electronic devices will include, but not be limited to, a search of, and for, computer passwords, computer passphrases, data security devices, records, documents, materials, electronic data, electronic mail, Internet history, geolocation data, chat sessions, mobile applications, short message service messages, multimedia messaging service messages.

1

4.      Evidence of the motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident to injure the person of another or transmit any a communication containing a threat to injure the person of another.

5.      Evidence of others who aided and abetted, counseled, commanded, induced, or procured the commission of an act to injure the person of another or to transmit any communication containing a threat to injure the person of another.

2